UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
In re:

Alice Phillips Belmonte,                                    Case No. 12-76045-AST
                                                            Chapter 7

                                    Debtor.
----------------------------------------------------------X

## DECISION AND ORDER DENYING MOTION TO REMOVE THE TRUSTEE AND TO DISQUALIFY THE TRUSTEE'S SPECIAL COUNSEL, <u>AND IMPOSING SANCTIONS</u>

Pending before the Court is the motion filed on behalf of the incarcerated Debtor, Alice

Phillips Belmonte, a disbarred attorney ("Debtor"), seeking to remove the chapter 7 trustee (the

"Trustee"), and to disqualify the Trustee's court approved special counsel (the "Removal

Motion").[1] Also pending is the motion filed by the Trustee seeking sanctions against Debtor and

her counsel for filing the Removal Motion, and to enjoin Debtor and her counsel from filing any

further pleadings in this case without prior leave of court (the "Sanctions Motion", and

collectively, the "Motions"). For the reasons stated below, the Court finds and concludes that

Debtor's Removal Motion is frivolous and should be denied, and that sanctions should be

imposed.

### Jurisdiction

This Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§

157(b)(2)(A) and 1334(b), and the Standing Orders of Reference in effect in the Eastern District

of New York dated August 28, 1986, and as amended on December 5, 2012, but made effective

*nunc pro tunc* as of June 23, 2011.

---

[1] While the Removal Motion was pending, the attorney who signed and filed it on Debtor's behalf filed a motion to withdraw as counsel.

The following constitute this Court's findings of fact and conclusions of law to the extent Bankruptcy Rule 7052 so requires. FED. R. BANKR. P. 7052. These findings and conclusions are based on the uncontested allegations in the parties' pleadings and exhibits, matters of which this Court may take judicial notice[2], and the hearing held on the Motions.

## Background and Procedural History

The Court will recite relevant aspects of this litigious chapter 7 case. On October 5, 2012, various petitioning creditors[3] filed an involuntary chapter 7 petition against Debtor[4] pursuant to 11 U.S.C. § 303(b)[5]. The Petitioning Creditors were represented by the law firm of Rich Michaelson Magaliff Moser, LLP (the "RMMM"). On October 26, 2012, Ms. Belmonte filed an answer seeking dismissal of the case; at that time, she was represented by attorney Craig A. Brand from Miami, Florida ("Mr. Brand"). [dkt item 12]

The proceedings during the involuntary phase were marred by numerous disputes between Mr. Brand and RMMM. Their interactions deteriorated to the point that on December 19, 2012, this Court issued an Order Prohibiting Unauthorized Contact With Chambers And Requiring Compliance With This Court's Civility Rules (the "Civility Order").[6] [dkt item 41]

---

[2] *Kavowras v. N.Y. Times Co.*, 328 F.3d 50, 57 (2d Cir. 2003) ("Judicial notice may be taken of public filings").

[3] The petitioning creditors were E. J. Elliott, George Kassianides, John E. Elliott, John E. Elliott Irrevocable Trust, Artemis Mellen Irrevocable Trust, Ted Eidson, Gregory Roper, R & S Fields Limited Partnership, Jefferson Investment LLC and James McCarthy (the "Petitioning Creditors").

[4] At the time the involuntary petition was filed, Debtor was licensed to practice law in New York. The petition sought relief against her for investment-related activities, not for her actions taken as an attorney.

[5] Unless otherwise indicated, all statutory references are to title 11 of the United States Code, §§ 101- 1532 (the "Bankruptcy Code").

[6] In the Civility Order, the Court noted that "counsel have exhibited an willingness and/or an inability to confer and reach agreement on matters as to which agreements should be reached, in violation of Administrative Order No. 568 entered October 28, 2010, providing for this Court's adoption of the New York State Standards of Civility for the legal profession, New York Rules of Court, Part 1200, Appendix A."

On February 12, 2013, Mr. Brand filed a motion to withdraw as Debtor's counsel, citing "[i]rreconcilable differences and material conflicts of interest…"  [dkt item 52]

On February 25, 2013, following a hearing on his motion, the Court authorized Mr. Brand to withdraw as Debtor's attorney of record.  [dkt item 58]

On April 5, 2013, Thomas A. Sadaka ("Mr. Sadaka") of the law firm of NeJame, LaFay, Jancha, Ahmed, Barker, Joshi & Moreno, PA, of Orlando, Florida entered an appearance on Debtor's behalf.  [dkt item 84]

On April 8, 2013, the trial on the involuntary petition was called as scheduled.  At that time, Ms. Belmonte was subject to an order prohibiting her from testifying at the trial in her case in chief as a discovery sanction for, *inter alia*, failing to appear at her own deposition.  [dkt item 65]  Following the close of the trial record, and for the reasons stated on the record following the trial, on April 25, 2013, the Court entered an order for relief under chapter 7.  [dkt item 88] Debtor did not appeal from the order for relief.

Shortly thereafter an interim trustee was appointed.  On June 12, 2013, the Office of the United States Trustee filed a report certifying the results of an election of a trustee conducted pursuant to § 702.  [dkt item 104]  Harold D. Jones was elected and subsequently appointed as the chapter 7 trustee of Debtor's bankruptcy estate (the "Trustee").  Debtor did not object to the Trustee's appointment.

On June 18, 2013, the Trustee filed an application and a declaration in support of retaining RMMM as his general counsel pursuant to § 327(a) (collectively, the "Retention Application").  [dkt item 110, 111]  The Retention Application affirmatively states that RMMM "no longer represents the Petitioning Creditors in connection with this (or any other) case."  The

Retention Application further provides that in the event of a conflict, the Trustee would seek to retain conflicts' counsel for any matters directly adverse to any of the Petitioning Creditors.

On June 26, 2013, and July 1, 2013, Debtor filed objections to the Retention Application; these objections were signed by Mr. Sadaka. [dkt items 115, 118] Debtor essentially argued that RMMM's prior and allegedly current representation of the Petitioning Creditors would violate § 327, because RMMM is not "disinterested" and "hold[s] or represent[s] an interest adverse to the estate". *See* 11 U.S.C. §§ 101(14), 327(a).

On July 1, 2013, the Court held a hearing on the Retention Application. For the reasons more fully set forth on the record and based on this Court's concern about potential conflicts of interest and the possible appearance of conflicts, the Court determined that it would not authorize RMMM to be retained as the Trustee's general counsel. However, the Court stated that given the substantial knowledge concerning Debtor and her operations that RMMM had developed, a limited scope retention of RMMM appeared to be appropriate; any representation by RMMM would have to exclude matters related to the investigation and potential prosecution of claims against the Petitioning Creditors. The Court further stated that it would consider such an application if and when filed.

On July 9, 2013, the Trustee filed applications to retain Jones & Schwartz, P.C. as his general counsel pursuant to § 327(a) [dkt items 120] and RMMM as his special counsel pursuant to § 327(e) (the "Special Counsel Application"). [dkt item 122] The Special Counsel Application sought to retain RMMM for the limited purposes of, *inter alia*, assisting the Trustee with his investigation into Debtor's prepetition law practice and business operations, undertaking Bankruptcy Rule 2004 examinations of any persons other than the Petitioning Creditors in connection with that investigation, and prosecuting adversary proceedings for avoidance actions,

except as against the Petitioning Creditors.  The Special Counsel Application reiterated that

RMMM no longer represented the Petitioning Creditors.   Neither Debtor, nor the United States

Trustee objected to either retention.

On July 10 the Court entered an order approving the retention of Jones & Schwartz, P.C.

as general counsel, and on August 1, 2013, entered an order approving limited scope retention of

RMMM. (collectively, the "Retention Orders").[7]  [dkt items 123, 129].  Debtor did not appeal

from either of the Retention Orders.

On October 8, 2013, the Trustee filed a motion to compel Debtor's current and former

attorneys, Mr. Brand, Mr. Sadaka and Michael Sherman of the Law Offices of Michael Sherman

of Connecticut[8] to file fee statements in compliance with § 329 and Bankruptcy Rule 2016 and to

disgorge any excessive fees (the "Disgorgement Motion").[9]  [dkt item 155]

On October 17, 2013, Debtor was arrested pursuant to a forty-nine (49) count indictment

issued by the Supreme Court of the State of New York, which alleges, *inter alia*, that Debtor

engaged in a scheme to defraud, and committed grand larceny with respect to the Petitioning

Creditors.  [dkt item 252]  Debtor was incarcerated pending trial.  That same day, Debtor,

---

[7] The retention of special counsel under § 327(e) is only necessary where the trustee seeks to employ an attorney who has previously represented the debtor. 11 U.S.C. § 327(e). RMMM has not previously represented Debtor. Therefore, the Trustee should have sought a limited scope retention under § 327(a), limited to the scope set forth in his application. As discussed *infra*, a chapter 7 trustee seeking employment of an attorney under § 327(a) or (e) must demonstrate to the court that the attorney does not hold or represent an interest adverse to the estate and does not hold an actual conflict of interest. 11 U.S.C. § 327(a), (c), & (e). Because the Court considered these factors in authorizing the limited scope of RMMM's retention, there is no need to disturb the Retention Orders.

[8] Mr. Sherman affirmed that he represented debtor on a limited basis between February and April 2013.  [dkt item 76]

[9]  The Court commenced a hearing on the Disgorgement Motion on November 19, 2013, and from the bench directed Debtor's attorneys to file detailed fee statements Messrs.' Brand, Sadaka and Sherman failed to comply, so on December 23, 2013, the Court entered an Order that they file the fee statements on or before January 20, 2014, redacted to the extent necessary to protect any applicable privileges. [dkt item 183]  Responsive statements were filed. [dkt items 188, 185, 186, 187]  The Trustee has not yet specified the amount of fees he seeks to have disgorged as excessive.

through Mr. Sadaka, filed a motion to stay the bankruptcy case pending the criminal prosecution (the "Stay Motion").  [dkt item 157]

On October 25, 2013, the Trustee filed opposition to the Stay Motion.  [165]

On October 29 and November 19, 2013, the Court held hearings on the Stay Motion.

By Order entered on December 2, 2013, the Court denied the Stay Motion upon consideration of the factors set forth in, *inter alia*, *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 99 (2d Cir. 2012), but did direct the Trustee to adjourn the § 341 meeting for four months, pending the criminal proceedings involving Debtor.  [dkt item 179]

On March 14, 2014, Debtor filed motions for authority to conduct Bankruptcy Rule 2004 examinations of Rich Michaelson and Eric Moser of RMMM regarding, *inter alia*, their relationship with certain Petitioning Creditors.  [dkt items 208, 209]

That same day, the Trustee filed an objection to both motions.  [dkt item 213]

On April 10, 2014, the Court entered orders denying Debtor's Rule 2004 motions to RMMM, for failing to have established cause to conduct the examinations. [dkt items 240, 241]

### The Present Motions

On March 24, 2014, Debtor filed a motion to remove the Trustee and to disqualify RMMM.  [dkt item 225]  Attached to that motion is a declaration signed by Debtor, who was still incarcerated pending trial on her criminal charges. The motion was procedurally deficient as, *inter alia*, it lacked a notice of hearing in violation of Local Bankruptcy Rule 9013-1(f).  On April 21, 2014, Mr. Sadaka re-signed and re-filed Debtor's Removal Motion, which also lacked a notice of hearing and now lacks a declaration or affidavit signed by Debtor.  [dkt item 252] However, due to the serious nature of the claims, the Court nevertheless set the Removal Motion down for a hearing for August 5, 2014.

Debtor begins her Removal Motion by challenging the legitimacy of the involuntary petition, an issue fully and finally resolved by the Court's April 25, 2013, Order for Relief. Debtor generally asserts that the Petitioning Creditors' claims against her are invalid, although she has yet to file a claim objection to any of their proofs of claim.  As to RMMM, Debtor then argues, again, that RMMM should be disqualified due to its prior representation of the Petitioning Creditors, despite this concern having specifically been addressed by this Court at the July 1 hearing on the Retention Application and resolved by entry of the Retention Orders.  As to the Trustee, Debtor asserts, without citing any statute, rule or case law, that he should be removed, because he is "thoroughly tainted by [RMMM's] conflict".

In an apparent effort to circumvent this Court having authorized RMMM's limited retention, Debtor points to the following as purported "new evidence" of RMMM's conflict: (1) RMMM, on the Trustee's behalf, has filed numerous adversary proceedings against various parties, but none against the Petitioning Creditors; and (2) RMMM, on behalf of the Trustee, objected to Debtor's motions for Bankruptcy Rule 2004 examination of members of the RMMM law firm.  First, Debtor asserts that viable causes of action against the Petitioning Creditors exist based on her allegedly transferring over $1.4 million to one or more of the Petitioning Creditors and that RMMM and the Trustee have acted in bad faith by failing to examine or take any action in furtherance of those potential recoveries.  Second, Debtor argues that by objecting to her efforts to take Rule 2004 examinations of members of the RMMM law firm, RMMM is attempting to shield its prior clients and their "extortive attempts to collect the purported debt owed by the Debtor and their potential criminal acts and preferential transfers."  However, Debtor omits from her Removal Motion that the Court entered orders denying her Rule 2004

motions nearly two weeks before she refiled her Removal Motion, and that she did not appeal from or seek reconsideration of those orders.

On June 11, 2014, Debtor entered into a plea agreement whereby she plead guilty to several counts in the NY County indictment, including several of those that accused Debtor of defrauding one or more of the Petitioning Creditors.

On July 8, 2014, the Trustee filed and served his Sanctions Motion on Mr. Sadaka.[10] He seeks the imposition of monetary sanctions against Debtor and Mr. Sadaka pursuant to 11 U.S.C. § 105(a), 28 U.S.C. § 1927, and Bankruptcy Rule 9011 for filing the Removal Motion, and seeks an injunction prohibiting them and the Nejame law firm from filing further pleadings seeking any affirmative relief without first obtaining leave of court. [dkt item 263] The Trustee contends, among other things, that the filing of the Removal Motion is part of a repeated and ongoing effort to impede the Trustee's administration of this case; this pattern of obstruction includes the filing of the motion to stay the bankruptcy case, the filing of the Rule 2004 examinations of RMMM attorneys, forcing the Trustee to file a motion to compel Debtor's attorneys to file the fee statements required by statute, and Debtor's alleged failure to file complete and accurate schedules and turnover property of the estate. The Trustee affirms that a materially identical draft of the Sanctions Motion was served on Mr. Sadaka on March 25, 2014.

On July 29, 2014, the Trustee filed an objection to the Removal Motion itself. [dkt item 278] The Trustee argues that Debtor's Motion "is unfounded in fact and law, and represents the latest installment in an ongoing campaign by the Debtor, a convicted felon with no discernable monetary interest in this case, to interfere with the Trustee's ongoing efforts to administer this estate for the benefit of the Debtor's creditors, most of whom are victims of the Debtor's very

---

[10] As is further discussed *supra*, the Sanctions Motion was served on Mr. Sadaka at least 21 days before it was filed with the Court.

own criminal misconduct." The Trustee also argues that he and RMMM have been diligently exercising their duties on behalf of the estate by investigating Debtor's affairs through numerous Rule 2004 examinations and by commencing lawsuits to recover funds for the estate.[11] The Trustee, independent of RMMM, alleges that he has sought and obtained discovery from the Petitioning Creditors and is continuing to investigate and review claims against them. Further, the Trustee contends that Debtor has failed to establish cause to remove the Trustee or to disqualify RMMM and/or reconsider the Court's retention of RMMM as the Trustee's special counsel.

Neither Debtor nor Mr. Sadaka filed opposition to the Sanctions Motion.

On August 5, 2014, the Court held a hearing on the Motions, which was attended by Mr. Jones, Mr. Michaelson, and Mr. Moser for the Trustee and RMMM, by Mr. Sadaka for Debtor, and by Mr. Brand; the purpose of Mr. Brand's attendance is unclear to the Court as he withdrew as counsel to Debtor in this case.[12]

In an effort to support the Removal Motion, Mr. Sadaka elaborated that at the trial on the involuntary petition the Petitioning Creditors allegedly admitted to their receipt of approximately $1.4 million from Debtor, and that but for RMMM's conflict of interest, the Trustee and RMMM would have commenced an adversary proceeding to recover those funds, because of their "immediate" availability to the estate. Mr. Sadaka, however, acknowledged that the statute of limitations to file such lawsuits had not run as of the filing of the Removal Motion and would not

---

[11] At the time Debtor filed her Amended Motion, the Trustee alleged that he had conducted sixteen Bankruptcy Rule 2004 examinations and had filed twenty one adversary proceedings. The Court notes that at the time of this decision the Trustee has obtained approval to conduct more than thirty Bankruptcy Rule 2004 examinations and has commenced over fifty adversary proceedings on behalf of the estate.

[12] Although Mr. Brand had been allowed to withdraw from representing Debtor at his request, and was not subsequently allowed by this Court to re-enroll on her behalf, he continues to file letters and appear at hearings on matters that do not specifically relate to him or his law firm, including the hearing on the Motions. He now refers to himself as Debtor's criminal counsel, although she has plead and been sentenced under the NY County indictment.

run until April of 2015.  Further, because RMMM was prohibited from filing a lawsuit against any of the Petitioning Creditors by the express terms of the Court's Retention Order, the Court inquired as to what RMMM had specifically done that exceeded the scope of its retention, or had failed to do that was within its scope.  Mr. Sadaka could not point to any such unauthorized act or improper conduct.  The Court then inquired as to what the Trustee had allegedly done or had not done that would serve as a basis for his removal.  Mr. Sadaka, again, could not point to any unauthorized act or improper conduct, but generally contended that RMMM's dominance over the Trustee's exercise of the Trustee's discretion rendered that question difficult to answer. [13]

On September 8, 2014, Mr. Sadaka filed a Motion to Withdraw as Debtor's counsel, which he failed to properly serve or notice.  [dkt item 299]  Despite several requests from the Court that he correct his filing and service errors, Mr. Sadaka failed to comply.  Thus, on November 18, 2014, this Court entered an Order Denying Mr. Sadaka's Motion to Withdraw, without prejudice. [dkt item 325]

Debtor remains incarcerated.

### Discussion

### *Law of the Case*

As a preliminary matter, this Court should determine whether the law of the case doctrine bars Debtor from arguing that RMMM should be disqualified due to its prior representation of the Petitioning Creditors, since this issue was specifically addressed when the Court authorized RMMM's limited scope retention.

---

[13] The Court also expressed concern over whether Debtor had jurisprudential standing to challenge the exercise of the Trustee's business judgment over the administration of the estate. Debtor's counsel responded that Debtor's standing is based upon her membership in an estate to which the Trustee owes certain enumerated duties. The Trustee answered that Debtor lacks standing to proceed in that regard due to her lack of an economic stake in any recovery the Trustee may obtain; the Trustee informed the Court that the estate was administratively insolvent and that any anticipated recovery would not create a surplus that could inure to Debtor's benefit. Because the parties did not brief the issue of Debtor's standing, however, the Court declines to now address it.

"Under the law of the case doctrine, a decision on an issue of law made at one stage becomes binding precedent to be followed in subsequent stages of the same litigation." *In re Renz*, 476 B.R. 382, 388 (Bankr. E.D.N.Y. 2012) (quoting *Liona Corp. v. PCH Assocs. (In re PCH Assocs.),* 949 F.2d 585, 592 (2d Cir. 1991)).[14]  However, courts, are not bound to apply the law of the case doctrine; "[it] counsels a court against revisiting its prior rulings in subsequent stages of the same case absent 'cogent' and 'compelling' reasons such as an 'intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'"  *Id.* (quoting *Ali v. Mukasey*, 529 F.3d 478, 490 (2d Cir. 2008)).

As noted, on July 1, 2013, the Court denied the Trustee's initial request to retain RMMM as his general counsel, based primarily upon the potential conflicts of interest that could arise between RMMM and the Petitioning Creditors.  The Trustee then filed the Special Counsel Application, which the Court approved, under which retention of RMMM specifically excluded the investigation into the Petitioning Creditors' transactions with Debtor and the prosecution of any actions against them.  Debtor did not object to the Trustee's limited retention of RMMM nor did she appeal from the Retention Orders.

This Court's decision to authorize the Trustee's retention of RMMM as his special counsel is the law of this case.  By her Motion, Debtor seeks to re-litigate the conflicts of interest issues that have already been decided.  The Court specifically considered and rejected Debtor's contentions that RMMM was not a disinterested person, held or represented an interest adverse to the estate, or otherwise held an actual conflict of interest with the estate as to the limited scope

---

[14] The Court notes that although the order authorizing the retention of RMMM as special counsel to the Trustee was a final order appealable under 28 U.S.C. § 158(a), *In re Persaud*, 496 B.R. 667, 670 (E.D.N.Y. 2013), the doctrine of *res judicata* is inapplicable here because, "*[r]es judicata* does not speak to direct attacks in the same case, but rather has application in subsequent actions." *Rezzonico v. H & R Block, Inc.*, 182 F.3d 144, 148 (2d Cir. 1999) (emphasis in original).

for which it sought to be retained.  *See* 11 U.S.C. §§ 101(14), 327(a), (c), (e).  Moreover, Debtor has not pointed to any compelling reason such as intervening case law or statutory authority or newly discovered evidence that warrants reconsideration of that decision.  Accordingly, the Court declines to reverse or revisit its prior determination that the Trustee may retain RMMM as his special counsel and for a limited scope.

### *Disqualification of RMMM*

There is no basis to now disqualify RMMM.  The Second Circuit has stated that "[s]ection 327 in general regulates the trustee's ability to hire professionals and serves the important policy of ensuring that the professionals' service presents no conflict of interest." *Vouzianas v. Ready & Pontisakos (In re Vouzianas)*, 259 F.3d 103, 107-108 (2d Cir. 2001). Further, bankruptcy courts are cautioned that "[they] should interfere with the trustee's choice of counsel only in the rarest cases, such as when the proposed attorney has a conflict of interest, or when it is clear that the best interest of the estate would not be served by the trustee's choice." *In re Smith*, 507 F.3d 64, 71 (2d Cir. 2007) (internal quotation marks and modifications omitted).

Debtor has failed to demonstrate that RMMM is no longer disinterested, has developed a conflict of interest, or that its continued retention is not in the best interests of the estate.  A person is disinterested under the Bankruptcy Code if he or she "does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason."  11 U.S.C. § 101(14)(C).  An attorney holds an adverse interest to the estate if he or she (1) possesses or asserts "any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant" or (2) possesses "a predisposition under circumstances that

render such a bias against the estate." *Bank Brussels Lambert v. Coan (In re AroChem Corp.)*, 176 F.3d 610, 623 (2d Cir. 1999) (internal citation omitted).  Regardless of whether an attorney is retained under § 327(a) or (e), the Second Circuit has held "an attorney must not represent an adverse interest relating to the services which are to be performed by that attorney." *Id.*. at 622. Courts in this circuit are instructed to make the determination of whether an attorney holds an adverse interest on a case by case basis, with due consideration given to the totality of the circumstances. *Id.* at 621; *see also In re Residential Capital, LLC*, 2012 Bankr. LEXIS 3706, at *10 (Bankr. S.D.N.Y. Aug. 10, 2012).

Bankruptcy Rule 2014 requires that an application for employment of an attorney under § 327 "shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest…" FED. R. BANKR. P. 2014.  An attorney's disclosure obligations under Bankruptcy Rule 2014 continue beyond the court's approval of retention. *KLG Gates LLP v. Brown*, 506 B.R. 177, 193 (E.D.N.Y. 2014).

Here, Debtor has woefully failed to demonstrate that RMMM should be disqualified.[15] Debtor does not allege that RMMM held an undisclosed connection or representation or that it has taken on a representation which creates a conflict with the estate.  Inexplicably, Debtor posits that RMMM holds a conflict of interest with the estate based upon its failure to commence actions against the Petitioning Creditors, conduct that is specifically prohibited by the approved scope of retention.  Debtor's contention that RMMM's objection to Debtor's request to conduct Rule 2004 examinations of members of the RMMM firm, somehow warrants disqualification, is

---

[15] The Court notes that Debtor argues that RMMM should be disqualified because of a conflict arising from RMMM's prior representation of the Petitioning Creditors, not its prior representation of her, which would require a different analysis. *See e.g., Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 133 (2d Cir. 2005); *Pergament v. Ladak*, 2013 U.S. Dist. LEXIS 102824 (E.D.N.Y. July 23, 2013).

frivolous; this Court denied her 2004 motions two weeks before Debtor refiled her Removal

Motion.  Debtor failed to establish any basis upon which examination of the RMMM law firm,

purportedly as a means to obtain information about the Petitioning Creditors, was in any manner

permissible, even under the broad fishing expedition allowed into the debtor's assets, liabilities,

financial transactions and conduct.  *See In re Duratech Indus. Inc.*, 241 B.R. 283, 289 (E.D.N.Y.

1999).

Thus, there is nothing in the record before this Court to support Debtor's contentions that

RMMM is not disinterested, holds an adverse interest to the estate, or has a direct conflict of

interest to the estate with respect to the scope of its retention. The record is devoid of any

evidence that RMMM's Rule 2014 affidavit does not fully discloses the extent of its connections

with the Petitioning Creditors and Debtor, or was otherwise inadequate, or that RMMM's

continued retention is not in the best interests of the estate.  Therefore, the Court finds and

concludes that not only should Debtor's request to disqualify RMMM be denied, but that it is

entirely without merit.

### *Removal of the Trustee*

Debtor's request to remove the Trustee is also frivolous. Although Debtor fails to provide

any legal argument in support of her removal request, a court may only remove a chapter 7

trustee for "cause".  11 U.S.C. § 324(a).  If a trustee is removed from any case, he or she must be

removed from all cases in which he or she serves.  It is, thus, a powerful device, to be deployed

only in the most severe of cases.

The Bankruptcy Code does not define cause.  Case law under § 324 typically requires a

showing of fraud and actual injury to the debtor's interests.  *Surabian v. Picard*, 2014 U.S. Dist.

LEXIS 31356, at *5 (S.D.N.Y. Mar. 7, 2014) (collecting cases); *see Dieffenbach v. Haworth (In*

*re Haworth)*, 356 F. App'x 529, 530 (2d Cir. 2009).  Cause requires more than "unsupported

inferences".  *In re Carla Leather, Inc.*, 44 B.R. 457, 473 (Bankr. S.D.N.Y. 1984).  Rather, in

order to sustain her burden of proof, Debtor must make a "strong showing because the effect of

removal is deleterious to the continuity of the administration of the estate".  *Id.* (internal

quotations and citations omitted).

In this case, Debtor essentially argues that the Trustee should be removed because

RMMM's conflict is imputed to the Trustee by its control over the management and

administration of the estate.  In support of this argument, Debtor merely highlights that the

Trustee has not commenced any adversary proceedings against the Petitioning Creditors.  As

conceded by Debtor when the hearing on the Removal Motion occurred, and even now as of this

ruling, the statute of limitations for the commencement of avoidance actions against the

Petitioning Creditors under the Bankruptcy Code has not run.  *See* 11 U.S.C. § 546.  Moreover,

the Trustee, through his general counsel, obtained approval to conduct Rule 2004 examinations

of the Petitioning Creditors in October 2013, many months before the Removal Motion was

filed.  Based on the Trustee's unchallenged representations at the hearing on the Motion, he

sought and continues to seek discovery from the Petitioning Creditors without the assistance of

RMMM.  Here, as in any other case involving a bankruptcy trustee, this Court "will not entertain

objections to the trustee's management of the debtor's estate where the trustee's conduct

involves [his] good faith business judgment, is made on a reasonable basis, and is within the

scope of the trustee's authority under the Code."  *In re Taub*, 441 B.R. 211, 216 (Bankr.

E.D.N.Y. 2010) (internal quotations and alterations omitted).

Finally, Debtor has failed to prove that RMMM has a conflict of interest, a conflict of interest that can be imputed to the Trustee, or that RMMM is in control of the management and administration of the estate.

Thus, not only has Debtor not made the required "strong showing" to warrant removal of the Trustee, she has failed to make any showing for removal of the Trustee.

### *Sanctions Against Debtor and Mr. Sadaka*

The Trustee seeks sanctions against Mr. Sadaka under 28 U.S.C. § 1927 and against both Debtor and Mr. Sadaka under 11 U.S.C. § 105(a) and Bankruptcy Rule 9011 for filing the Removal Motion. The Court has determined that sanctions against Mr. Sadaka are warranted under Bankruptcy Rule 9011 and therefore does not need to consider the alternative prongs for relief. The Court will not, however, impose any sanctions against Debtor, because she was not individually served with a copy of the Sanctions Motion and therefore was not afforded adequate notice of the conduct alleged to be sanctionable or an adequate opportunity to respond. *See In re Ames Dept. Stores, Inc.,* 76 F.3d 66, 70 (2d Cir. 1996) ("due process requires that courts provide notice and [an] opportunity to be heard before imposing *any* kind of sanctions.") *overruled in part on other grounds Lamie v. United States Tr.*, 540 U.S. 526, 531 (2004).

Bankruptcy Rule 9011 authorizes a court to impose sanctions upon attorneys, law firms, or parties for the filing and prosecution of pleadings and other papers which are found to be frivolous under Rule 9011(b). [16] There are both procedural and substantive requirements for a court to consider prior to imposing sanctions.

---

[16] Bankruptcy Rule 9011(b) provides:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, -

Bankruptcy Rule 9011(c) requires that for sanctions to be considered on a motion filed by a party, the party against whom sanctions is sought must have been given a twenty-one day opportunity to withdraw the offending pleading. [17] These procedural steps are designed to provide for a resolution of matters within the scope of the rule without resorting to costly motion practice and judicial intervention. *See In re Bruns*, 2009 WL 1874192 at *1 (Bankr. E.D.N.Y. June 24, 2009). These requirements also "reflect the importance of according fair procedural protections to an attorney or other party facing sanction." *Klein v. Wilson, Elser, Moskowitz, Edelman & Dicker (In re Highgate Equities, Ltd.)*, 279 F.3d 148, 152 (2d. Cir. 2002).

In the Second Circuit, the substantive standard for imposing Bankruptcy Rule 9011 sanctions[18] when initiated by a party's motion is one of objective unreasonableness. *See In re*

---

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

FED. R. BANKR. P. 9011(b).

[17] A Rule 9011 motion must be made separately from other motions or requests and shall describe the specific conduct alleged to violate Rule 9011(b). The motion for sanctions "may not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected, except that this limitation shall not apply if the conduct alleged is the filing of a petition in violation of subdivision (b)." FED. R. BANKR. P. 9011(c)(1)(A). Consideration of sanctions may also be initiated by the court *sua sponte*. FED. R. BANKR. P. 9011(c)(1)(B).

[18] The standard is the same for Federal Rule 11 sanctions. The Second Circuit has held that the "application of [Bankruptcy] Rule 9011 is informed by Rule 11 jurisprudence." *In re Cohoes Indus. Terminal, Inc.*, 931 F.2d 222, 227 (2d Cir. 1991).

*Pennie & Edmonds LLP*, 323 F.3d 86, 90 (2d Cir. 2003).[19]  *See also Olivieri v. Thompson*, 803 F.2d 1265, 1275 (2d Cir. 1986) (Bankruptcy Rule 9011 sanctions are warranted where "it is patently clear that a claim has absolutely no chance of success."); *Eastway Construction Corp. v. City of New York*, 762 F.2d 243 (2d Cir. 1985) (same); *In re Negosh*, 2007 U.S. Dist. LEXIS 61842, at *19 (E.D.N.Y. Aug. 22, 2007) (same).  Even if a violation of Bankruptcy Rule 9011(b) is found, this Court still has discretion to impose or not impose sanctions.

Here, the Trustee has complied with the specific procedural requirements of 9011(c) as to Mr. Sadaka[20].  The Sanctions Motion was filed separately from other requests and Mr. Sadaka was served with a copy more than twenty-one days before it was filed with the Court.  Likewise, Mr. Sadaka was afforded adequate notice of the conduct alleged to be sanctionable and given a reasonable opportunity to respond to those allegations.  However, there is no indication that Debtor was served with a copy of the Sanctions Motion before or after it was filed with the Court.

The record amply demonstrates that the Removal Motion was objectively unreasonable, because "it is patently clear" that it had "absolutely no chance of success".  First, Debtor has improperly sought to re-litigate the Order for Relief and the Retention Orders, orders that stand as final and unappealed.  Debtor has failed to point to any facts or law that the Court overlooked

---

[19] Because of the safe harbor provision of Rule 9011(c)(1)(A) discussed *supra*, if the sanctions issue has arisen on *sua sponte* action by the court under Rule 9011(c)(1)(B), and the attorney therefore did not have the opportunity to withdraw the challenged document, the appropriate standard may be  subjective bad faith. *See Pennie*, 323 F.3d at 92-93 (discussing Rule 11(c)(1)(A) and court-initiated post trial sanctions).

[20]  The relief sought by the Trustee is as follows: "awarding monetary sanctions against the Debtor and Mr. Sadaka, jointly and severally, including the reasonable attorney's fees and costs incurred by the Trustee and his counsel in opposing the Motions to Remove and preparing this Rule 9011 Motion; (ii) enjoining the Debtor, Mr. Sadaka, and his law firm from seeking any affirmative relief in this case without prior authorization of Court…."  Thus, the Trustee has not sought sanctions against the Nejame law firm. "Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees"  FED. R. BANKR. R. 9011(c)(1)(A); *Desiderio v. Parikh (In re Parikh),* 508 B.R. 572, 596 (Bankr. E.D.N.Y. 2014). Here, however, because the Trustee did not seek monetary relief against the Nejame firm, the Court has determined it would be procedurally improper to grant such relief.

in deciding those matters.  Second, Debtor frivolously contends that the Trustee's and RMMM's failure to commence adversary proceedings against the Petitioning Creditors renders RMMM disqualified from representing the Trustee; yet, suing the Petitioning Creditors is specifically prohibited by RMMM's order of retention, and the statute of limitations has not expired. Debtor's allegation that the Trustee has failed to investigate the Petitioning Creditors transactions with Debtor is belied by the most cursory glance at the public docket, which reflects numerous orders entered by this Court allowing 2004 examinations of the Petitioning Creditors, orders entered well before the Removal Motion was filed.  Debtor's argument that RMMM's objection to her request for Rule 2004 examinations of members of the RMMM law firm constitutes evidence of its conflict of interest with the estate is also frivolous; the 2004 requests were denied by the Court before Debtor refiled the Removal Motion.

The foregoing leads the Court to the unmistakable conclusion that the Removal Motion was filed for the illegitimate purpose of harassing the Trustee and needlessly increasing the costs of administering the estate, in violation of Bankruptcy Rule 9011(b).  The Court also finds that the allegations in the Removal Motion lack evidentiary support and were unlikely to have evidentiary support after a reasonable opportunity for further investigation or discovery, also in violation of Bankruptcy Rule 9011(b).  Therefore, the Court will exercise its discretion to impose sanctions.

Having found that sanctions are in fact warranted, the Court must determine what an appropriate sanction should be.  The primary purpose of Bankruptcy Rule 9011 sanctions is to deter repetition of the offending conduct; its secondary purpose is to compensate any aggrieved parties.  *See* FED. R. BANKR. P. 9011(c)(2); *Desiderio v. Parikh (In re Parikh)*, 508 B.R. 572, 584 (Bankr. E.D.N.Y. 2014).  As a deterrent, Courts may award reasonable attorney's fees and other

expenses incurred as a direct result of the violative conduct.  *Id.; see also In re Ambotiene,* 316 B.R. 25, 34 (Bankr. E.D.N.Y. 2004).  Here, the Trustee, through RMMM, has requested sanctions against Mr. Sadaka in the form of attorney's fees and costs incurred in opposing the Removal Motion and filing and arguing the Sanctions Motion.  The Court finds that such a sanction is appropriate here to deter the repetition of Mr. Sadaka conduct and to compensate the Trustee and RMMM.

Accordingly, the Trustee and RMMM may file fee statements reflecting the attorney's fees the Trustee incurred in defending the Removal Motion within twenty-one days of entry of this order; Mr. Sadaka shall be allowed to respond within twenty-one days.  Thereafter, the Court will take on submission the amount of monetary sanctions to be awarded.

### *Injunction Against Filing Further Pleadings*

The Trustee has also requested that the Court enjoin Debtor, Mr. Sadaka, and his law firm from seeking affirmative relief in this case without obtaining prior authorization from the Court. Again, because the Trustee did not serve Debtor with the Sanctions Motion, the Court will not consider relief as against her.

Courts in this circuit have held that bankruptcy courts, like all federal courts, possess the inherent authority to prohibit abusive and vexatious litigation practices through the issuance of filing injunctions.  *See Deep v. Danaher*, 393 B.R. 51, 54-55 (N.D.N.Y. 2008) (affirming bankruptcy court's order enjoining plaintiff from filing further pleadings without leave); *In re Truong*, 2009 Bankr. LEXIS 2440, at *23-24 (Bankr. S.D.N.Y. Sept. 3, 2009).  In support of his request for a filing injunction, the Trustee has cited the factors considered by the Second Circuit in *Safir v. United States Lines, Inc.* 792 F.2d 19, 24 (2d Cir. 1986).

In *Safir*, the circuit court considered the following factors in determining whether to restrict a litigant's right to file pleadings in federal court:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

*Id.*; *see also In re Martin-Trigona*, 737 F.2d 154, 1262 (2d Cir. 1984).  "Ultimately, the question the court must answer is whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties." *Safir*, 792 F.2d at 24 (2d Cir. 1986).

At this juncture, the Court finds it unlikely that Mr. Sadaka's conduct will continue in this case.  Mr. Sadaka and his law firm previously sought to withdraw as Debtor's counsel, and should have the opportunity to properly re-file and re-serve such a request.  Hearings have been conducted in Debtor's case since the hearings on the Motions, in which Mr. Sadaka and his law firm have not participated.  The Court will defer ruling on the issuance of a filing injunction as to Mr. Sadaka and his law firm for sixty (60) days, to determine whether he and his law firm intend to renew their motion to withdraw.

## Conclusion

Based on the foregoing, it is hereby

**ORDERED**, that Debtor's Removal Motion is denied in its entirety; and it is further

**ORDERED**, that the Sanctions Motion is granted in part as set forth herein; and it is further

**ORDERED**, that pursuant to Bankruptcy Rule 9011, the Trustee and RMMM shall be awarded their reasonable attorney's fees and expenses incurred in opposing the Removal Motion and in prosecuting the Sanctions Motion; Mr. Sadaka shall be liable for any amounts awarded; and it is further

**ORDERED**, that the Trustee and RMMM shall file and serve on Mr. Sadaka invoices consistent with this ruling within **twenty-one days** from entry of this order; Mr. Sadaka may file a response to those invoices within **twenty-one days** of their service; and it is further

**ORDERED**, that the Court will defer ruling on the issuance of a filing injunction for **sixty (60) days**; at the conclusion of that time period, the Trustee may file a supplemental statement to renew or withdraw his request to restrict Mr. Sadaka's or his law firm's right to file pleadings before this Court.



**Dated: January 28, 2015**
**Central Islip, New York**

_____
**Alan S. Trust**
**United States Bankruptcy Judge**